UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SAMMY J. MOORE,

        Plaintiff,

        v.                                                                                        07-1173-HAB-JAG

PETER LISZEWSKI; MARK G.
COLEAS; D. CATION; SYLVIA
MAHONE, M.D.; MED TECH BEASLY,
in their individual capacities,

        Defendants.


MEMORANDUM OPINION AND ORDER

      Before the court are the defendant SYLVIA MAHONE's summary judgement motion [78], the plaintiff's response [101] and the defendant's reply [107].

Standard

      Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

      "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

The plaintiff, a state prisoner, filed a complaint pursuant to 42 U.S.C. §1983, alleging that the defendant violated his rights under the Eighth Amendment to the United States Constitution. The plaintiff filed a claim against Dr. Mahone alleging deliberate indifference to a serious medical need. The plaintiff claims that Dr. Mahone was deliberately indifferent to an injury he sustained while he was an inmate at the Pinckneyville Correctional Center. The defendant Mahone denies that the plaintiff suffers from a serious medical need and further denies that any act or omission on her part constitutes deliberate indifference. The court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

## Undisputed Material Facts[1]

1. The plaintiff was transferred to the Pontiac Correctional Center on March 2, 2007. (Mahone Aff., par. 3.)
2. Prior to being transferred to Pontiac Correctional Center, the plaintiff had been incarcerated at the Pinckneyville Correctional Center. (Mahone Aff., par. 4.)
3. Prior to arriving at the Pontiac Correctional Center, the defendant had little to no contact with the plaintiff. (Mahone Aff., par. 5.)
4. The plaintiff's transfer summary sheet indicates that the plaintiff had two lacerations on his head which required a number of sutures. (Mahone Aff., par. 6.)
5. The defendant was contacted by a nurse regarding the plaintiff's sutures. (Mahone Aff., par. 7.)
6. The defendant gave a telephone order to this nurse advising that the plaintiff's sutures be removed in seven days. (Mahone Aff., par. 7.)
7. The defendant ordered Keflex, an antibiotic, and Tylenol for pain for the plaintiff on the same date that she advised the nurse of when to remove the plaintiff's sutures. (Mahone Aff., par. 7.)
8. The defendant is aware that the plaintiff's complaints against her relate to her prescription orders for Keflex and Tylenol written on March 2, 2007. (Mahone Aff., par. 8.)
9. The defendant's order was given via telephone to a nurse to renew or approve the

---

[1] The plaintiff disputes many of the facts in his reply [107], however, he does not present any admissible evidence to refute these statements.

|     |     |
| --- | --- |
|     | plaintiff's previously written order for Keflex and Tylenol.  (Mahone Aff., par. 8.) |
| 10. | As the defendant read the order, written by someone who appears to be either a physician or a physician's assistant, the plaintiff  was given a tetanus shot at the Pickneyville Correctional Center.  (Mahone Aff., par. 8.) |
| 11. | The order that was read by the defendant further indicated that the plaintiff was to receive Keflex 500 mg p.o. (orally), qid (4 times per day) with 28 pills prescribed.  (Mahone Aff., par. 9.) |
| 12. | Giving the plaintiff Keflex as written would have lasted seven days.  (Mahone Aff., par. 10.) |
| 13. | The defendant's order written on March 2, 2007, provided the plaintiff with two doses of Keflex in 500 mg doses for ten days as she believed this dosage would be more effective for him.  (Mahone Aff., par. 10.) |
| 14. | With respect to the Tylenol, the prior medical provider indicated the plaintiff was to receive his pain medication every six hours as needed for pain, allowing the plaintiff to receive medication four times per day.  (Mahone Aff., par. 11.) |
| 15. | The prior physician noted that twelve pills would be available, (as indicated by the #12) which would have lasted three days.  (Mahone Aff., par. 11.) |
| 16. | The defendant also wrote a prescription for the plaintiff to receive Tylenol 325 mg twice a day for three days.  (Mahone Aff., par. 12.) |
| 17. | Although the prescriptions were not identical, they were very similar.  (Mahone Aff., par. 13.) |
| 18. | In the defendant's medical opinion, she believed the prescription as she wrote it was the most effective for the plaintiff.  (Mahone Aff., par. 13.) |
| 19. | The plaintiff did not suffer from any infection of his wounds and the defendant believes that the prescriptions as provided were very effective.  (Mahone Aff., par. 14.) |
| 20. | The plaintiff sent a note to the defendant on July 12, 2007.  (Mahone Aff., par. 15.) |
| 21. | The plaintiff complained that he would like to have his eyes checked due to blurry vision.  (Mahone Aff., par. 15.) |
| 22. | The plaintiff  was evaluated by the optometrist, Dr. Montwill, on July 27, 2007 for complaints of blurry vision and migraine headaches.  (Mahone Aff., par. 17.) |
| 23. | The defendant did not participate in this evaluation or assessment.  (Mahone Aff., par. 18.) |
| 24. | The first note actually written by the defendant in the plaintiff's chart is dated July 30, 2007 and states that the plaintiff was complaining of headaches.    (Mahone Aff., par. 19.) |
| 25. | The plaintiff did not previously request sick call.  (Mahone Aff., par. 19.) |
| 26. | The defendant requested that the plaintiff be placed on the M.D. sick call in his cellhouse for the week of July 30, 2007.  (Mahone Aff., par. 19.) |
| 27. | The plaintiff  was then seen in the M.D. sick call on August 7, 2007.  (Mahone Aff., par. 20.) |
| 28. | The plaintiff was seen by Dr. Zhang, a staff physician at the Pontiac Correctional Center.  (Mahone Aff., par. 20.) |
| 29. | On that date, the plaintiff complained of suffering from headaches for four or five months. |

(Mahone Aff., par. 21.)
30. Dr. Zhang conducted an examination wherein she noted no significant abnormalities. (Mahone Aff., par. 21.)
31. Dr. Zhang's assessment was self-reported headache. (Mahone Aff., par. 21.)
32. Dr. Zhang's plan was to provide a skull X-ray. (Mahone Aff., par. 21.)
33. An X-ray of the plaintiff's skull was taken on August 10, 2007 as requested by Dr. Zhang. (Mahone Aff., par. 22.)
34. The radiology findings indicated there was no bony abnormality. (Mahone Aff., par. 22.)
35. On August 24, 2007, the defendant made a note in the plaintiff's chart. (Mahone Aff., par. 23.)
36. The defendant's note indicated that the plaintiff suggested the Tylenol was not helping him and that he may need to be evaluated for possible migraine headaches. (Mahone Aff., par. 23.)
38. The plaintiff was to be scheduled on the physician sick call in his cellhouse the week of August 24, 2007. (Mahone Aff., par. 23.)
39. On August 28, 2007, the plaintiff indicated that he was not willing to participate in sick call. (Mahone Aff., par. 24.)
40. The plaintiff was advised to follow up as needed at that time. (Mahone Aff., par. 24.)
41. The plaintiff followed up with Dr. Montwill on September 7, 2007 regarding his headaches and further evaluation of his vision. (Mahone Aff., par. 25.)
42. Dr. Montwill discussed using glasses for near activities only. (Mahone Aff., par. 25.)
43. The plaintiff was transferred to the Mernard Correctional Center on March 12, 2008. (Mahone Aff., par. 26.)
44. Once the plaintiff was transferred out of the Pontiac Correctional Center, he was no longer treated by anyone employed at the Pontiac Correctional Center. (Mahone Aff., par. 27.)
45. During the time that the plaintiff was an inmate at the Pontiac Correctional Center, the defendant does not believe that he suffered from a serious medical need at any time. (Mahone Aff., par. 28)
46. All of the plaintiff's medical complaints were treated appropriately by the medical staff, based upon the defendant's review of those records. (Mahone Aff., par. 29.)
47. The defendant had little to no contact with the plaintiff directly. (Mahone Aff., par. 30.)
48. The defendant's contacts with him were by written letter and not by personal evaluation. (Mahone Aff., par. 31.)
49. The plaintiff's wounds on his head were treated with the appropriate antibiotics, band-aids, and pain medications. (Mahone Aff., par. 32.)
50. According to the defendant's review of the records, it is her opinion that the plaintiff suffered no complications regarding his wounds on his head. (Mahone Aff., par. 34.)
51. The plaintiff's headaches were treated with appropriate medications. (Mahone Aff., par. 35.)

52. The defendant's specific prescription orders for Keflex and Tylenol were not identical to those written by the prior medical provider, but were very similar. (Mahone Aff., par. 36.)

53. In the defendant's medical opinion, her prescription orders were reasonable and within the standard of care. (Mahone Aff., par. 36.)
54. The plaintiff's complaints relating both to his headaches and to the wounds on the top of his head placed him at no risk of serious harm during the time that he was at the Pontiac Correctional Center. (Mahone Aff., par. 37.)
55. It is routine practice to rely upon a nurse's assessment of a patient's condition and existing medication orders at the time he arrives at the Pontiac Correctional Center. (Mahone Aff., par. 38.)
56. The defendant relied upon the assessment made by the nurse in drafting her own prescription order for the plaintiff. (Mahone Aff., par. 38.)
57. The plaintiff has been incarcerated at Menard Correctional Center since March 12, 2008. (Plaintiff's Dep., p. 6.)
58. The plaintiff was at the Pontiac Correctional Center from March 2, 2007 through March 12, 2008. (Plaintiff's Dep., p. 7.)
59. The plaintiff never spoke directly with the defendant. (Plaintiff's Dep., p. 7, ll. 10-11.)
60. The plaintiff alleges that he was prescribed certain medication by medical staff at the Pickneyville Correctional Center. (Plaintiff's Dep., p. 10, ll. 1-9.)
61. The plaintiff claims that the defendant improperly stopped his medication (Tylenol). (Plaintiff's Dep., p. 10, ll. 10-15.)
62. Specifically, the plaintiff asserts that the defendant took it upon herself to change the prescription that he had been given by a different medical provider. (Plaintiff's Dep., p. 11, ll. 2-9.)
63. The plaintiff's complaints against the defendant relate to the order for medication that she wrote him on March 2, 2007. (Plaintiff's Dep., p. 13.)
64. The plaintiff believes that the defendant significantly changed the prescription for pain medication and antibiotics. (Plaintiff's Dep., p. 13.)
65. The plaintiff complains that the defendant did not see him, so he takes issue with the fact that she changed his prescription. (Plaintiff's Dep., p. 17, ll. 3-17.)
66. The plaintiff claims that he suffered pain and suffering by not being given pain medication. (Plaintiff's Dep., p. 20, ll. 1-9.)
67. The plaintiff's complaint against the defendant is that she changed his prescription. (Plaintiff's Dep., p. 22, ll. 10-14.)
68. Between March of 2007 and August of 2007, the plaintiff saw CMTs (correctional medical technicians). (Plaintiff's Dep., p. 24, ll. 1-9.)
69. The plaintiff was never referred to any nurses by the CMTs before August of 2007. (Plaintiff's Dep., p. 24, ll. 10-12.)
70. The plaintiff saw a physician in August of 2007 that prescribed him Tylenol. (Plaintiff's Dep., p. 24, ll. 22-25; p. 25, ll. 1-8.)
71. The plaintiff has no medical conditions that he is aware of. (Plaintiff's Dep., p. 26, ll. 21-23.)
72. The plaintiff does not recall the name of the medical provider at Pickneyville but he indicates however, that he was treated by a physician's assistant. (Plaintiff's Dep., p. 31.)
73. The plaintiff interpreted the prescription from Pickneyville as indicating that he was to receive Keflex for 28 days and Tylenol for 12 days. (Plaintiff's Dep., p. 32, ll. 21-25; p.

33, ll. 1-4.)
74. The plaintiff never saw the defendant regarding complaints of headaches. (Plaintiff's Dep., p. 34, ll. 21-24.)
75. The plaintiff did see an Oriental physician for his complaints and the eye doctor. (Plaintiff's Dep., p. 35, ll. 1-6.)

Discussion and Conclusion

The plaintiff's claim for relief was brought pursuant to 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). It is undisputed that the defendant acted under the color of state law while working within the Illinois Department of Corrections.

In order to state a cognizable Section 1983 claim, a plaintiff must allege that the defendant had some *personal involvement* in the deprivation of the plaintiff's constitutional right. *McDonald v. Illinois,* 557 F. 2d 596, 602 (7th Cir. 1977) (emphasis added). However, "...[a] defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of Section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Crowder v. Lash*, 687 996, 105 (1982)). *See Kentucky v. Graham,* 473 U.S. 159 (1985). Essentially, a plaintiff can state a claim for relief under Section 1983 against a defendant that has a realistic opportunity to step in and prevent the violation of the plaintiff's right, but fails to do so. *Miller*, 220 F.3d at 495.

In this case, the plaintiff has shown, as a matter of law, that the defendant had the requisite personal involvement for liability under §1983. To establish personal involvement, it is required that there be *some* causal connection or affirmative link between the action complained about and the official sued. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis added). Although the defendant's involvement was not substantial, she was personally involved in the plaintiff's medical care. She admits that she order a nurse to remov the plaintiff's sutures; she ordered medication for the plaintiff; she reviewed the plaintff's radiology findings and noted those findings in his medical chart and suggested that he may need to be evaluated for possible migraine headaches.

To the extent the plaintiff is complaining of the care and treatment provided to him by

anyone other than Dr. Mahone[2], the plaintiff has failed to establish that Mahone was personally responsible for such care and treatment, whether it constituted a deprivation of a constitutional right or not. *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006), *quoting* Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). To the extent that the plaintiff may be suggesting that Dr. Mahone is responsible for an act of omission for someone other than herself, such claim is not supported by the law under § 1983. The defendant cannot be held liable for any perceived (by the plaintiff) inadequate care provided to him by other physicians and medical staff. Liability under 42 U.S.C. § 1983 must be based on a defendant's personal involvement in the alleged constitutional deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Thus, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Accordingly, the defendant is entitled to judgment as a matter of law under any such claim

In order to prove a civil rights violation under the Eighth Amendment concerning care and treatment of a medical condition, the plaintiff must prove deliberate indifference to a serious medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). First the plaintiff must prove that he suffers from a serious medical need. The plaintiff then must also provide evidence that the defendant was deliberately indifferent to a serious medical need. A medical need is serious if it is one that a physician has diagnosed as ". . . mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention . . ." *Id.* at 1373. A medical need is also serious if leaving it ". . .untreated could result in further significant injury or unnecessary pain . . ." *Id.* (quoting *Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H. 1977).

The court agrees with the plaintiff that the sutured cuts on his head were a serious medical need. The plaintiff's cuts were deemed by medical professionals as warranting treatment as his cuts were treated before and after he arrived at Pontiac Correctional Center. However, the plaintiff must also prove the defendant was deliberately indifferent to his serious medical need.

Deliberate indifference exists when a prison official knows of an excessive risk of health or safety and consciously disregards it. *Wynn v. Southward*, 251 F.3d 588, 593. (citing *Zentmyer v. Kendall County, Illinois,* 220 F.3d 805,810 (7th Cir. 2000). In order to establish deliberate indifference, the plaintiff must show that the physician was both aware of the fact " . . . from which the inference could be drawn that a substantial risk of serious harm exists, and he must actually draw the inference." *Higgins v. Correctional Medical Services of Illinois*, 178 F.3d 508, 511 (7th Cir. 1999). (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). At a minimum, this requires actual knowledge of impending harm, which is easily preventable, " . . . so that a conscious, capable refusal to prevent harm can be

---

[2]The court notes that it appears the defendant made a typographical error in her motion for summary judgment when she referred to "Dr. Feinerman" rather than "Dr. Mahone" on page 16.

inferred from the defendant's failure to prevent it". *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985)). Deliberate indifference is something approaching a total unconcern for the plaintiff's welfare in the face of serious risks, or a conscious culpable refusal to prevent the harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992).

The exercise by a physician of his professional judgment does not constitute deliberate indifference. *See Youngberg v. Romeo*, 457 U.S. 307, 322-323 (1982). While a prisoner may have a right to medical care, he does not have the right to determine the type and scope of medical care he personally desires. A difference of opinion between a physician and the patient does not give rise to a constitutional right, nor does it state a cause of action under § 1983. *Coopinger v. Townsend,* 398 F.2d 392, 394 (10th Cir. 1968). Medical decisions, such as whether one course of treatment is preferable to another are beyond the Eight Amendment's purview. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Inmates are entitled only to "adequate medical care." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002).

The basis of the plaintiff's claim is that the defendant changed the prescription he had been given at Pickneyville Correctional Center in March of 2007 to something significantly different when he arrived at Pontiac Correctional Center. Even if the plaintiff is correct that his prescription was changed significantly by the defendant, the court finds that the changing of his prescription does not amount to deliberate indifference. The plaintiff is entitled to receive adequate medical care rather than the care he chooses. There is no evidence presented by the plaintiff to suggest that the care provided by Dr. Mahone was inadequate, as he did not suffer an infection of his wounds and was provided with pain medication. The plaintiff does not make allegations suggesting that the care and treatment provided to him was ineffective. He merely asserts that the care and treatment he received was different from what was originally provided to him at Pickneyville Correctional Center.

The court finds that the defendant was not deliberately indifferent to the plaintiff's medical needs. The difference of opinion between the defendant and the plaintiff did not give rise to a constitutional right nor a cognizable Section 1983 claim. Therefore, the defendants' summary judgment motion is granted [78].

Based on the foregoing it is ordered:

1. IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [78] is granted pursuant to Fed. R. Civ. P. Rule 56(c). The clerk of the court is directed to enter judgment at the close of this case against the plaintiff pursuant to Fed. R. Civ. P. Rule 56(c).
2. If the plaintiff wishes to appeal this decision, he must file a notice of appeal with this court within 30 days of entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

> Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28U.S.C. 1915(g).

Entered this 17th day of September 2009.

> /s/ Harold A. Baker
> _____
> Harold A. Baker
> United States District Judge